F I L E D
 Clerk
 District Court
JUL 25 2016
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| YU MIN ZHAO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | CASE NO.  1:15-CV-00019<br><br>**DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

## I.　　INTRODUCTION

In the early morning of October 18, 2013, Plaintiff Yu Min Zhao arrived with her husband at Saipan International Airport on a flight from Beijing. Officers of United States Customs and Border Protection (CBP) permitted her husband to enter on a visa waiver, but Zhao was denied entry and detained. Zhao alleges that she was detained because officers suspected she was pregnant; that she was held incommunicado for 22 hours before being put on a flight back to China; that she was handcuffed and not allowed to speak to an attorney; that she was subjected to a body search; that officers threatened to arrest and deport her husband if she did not leave voluntarily; and that when she refused to cooperate, officers slammed her head against a wall, pulled her hair and kicked her.

In her Complaint (ECF No. 1), Zhao brings three claims against Defendant United States of America ("Government") under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b): (1) false arrest and imprisonment; (2) intentional infliction of emotional distress; and (3) assault

1

and battery.

Before the Court is the Government's Motion to Dismiss for Failure to State a Claim for Causes of Action One and Two only (ECF No. 6). Zhao filed an Opposition (ECF No. 11), which she later corrected (Notice of Errata, ECF No. 12), and the Government filed a Reply (ECF No. 13). The matter came on for a hearing on July 7, 2016. Having considered the written submissions[1] and the oral arguments of counsel, the Court now GRANTS the motion to dismiss, with prejudice as to the first cause of action and without prejudice as to the second.

## II.     LEGAL STANDARD

On a Rule 12(b)(6) motion, all well-pled factual allegations are taken as true. *Hebbe v. Pliler,* 627 F.3d 338, 341–42 (9th Cir. 2010). A claim for relief will survive a Rule 12(b)(6) motion if the complaint alleges sufficient facts for the claim to be "plausible on its face." *Bell Atlantic v. Twomby,* 550 U.S. 554, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The purpose of this standard is "to give fair notice and to enable the opposing party to defend itself effectively" and to ensure "that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Bacca,* 652 F.3d 1202, 1216 (9th Cir. 2011).

## III.    DISCUSSION

Under the FTCA, the United States waives sovereign immunity to tort liability "under circumstances where the United States, if a private person, would be liable to the claimant in

---

[1] The Government submitted as an exhibit an affidavit of U.S. Customs and Border Protection Port Director Rene A. Masculino (ECF No. 6-2). At the hearing, Plaintiff's counsel objected that it is not proper to consider the affidavit on a motion to dismiss because it is not part of Zhao's Complaint. *See Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006). The Court agrees and has not considered the affidavit in deciding the motion.

accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because the acts of which Zhao complains took place in the Commonwealth of the Northern Mariana Islands (CNMI or "Commonwealth"), CNMI law applies.

### A. False Arrest and Imprisonment

Claims arising out of false imprisonment and false arrest are not excepted from the FTCA waiver when they concern acts of "investigative or law enforcement officers of the United States Government," meaning "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). The Government does not dispute that CPB officers are law enforcement officers. Indeed, its primary argument for dismissal of the first cause of action is that the officers had authority to arrest and detain Zhao.

In the Commonwealth, a person commits the crime of false arrest "if he or she unlawfully detains another by force and against the other person's will, then and there not being in possession of authority to do so." 6 C.M.C. (N. Mar. I. Code) § 1422(a). The Commonwealth Code does not create a tort of false arrest or false imprisonment. When Commonwealth written law and local customary law are silent, Commonwealth courts apply "the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed as generally understood and applied in the United States[.]" 7 CMC § 3401; *see Ada v. Sablan,* 1 N.M.I. 415, 424 (1990). Section 35 of the Restatement (Second) of Torts states that an actor is liable for false imprisonment if "(a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is

harmed by it."[2] A person is not liable if he had legal authority to arrest the complainant. *See id.,* cmt. a. Thus, the essential elements of the crime and the tort of false imprisonment are the same: intent, confinement against the other's will (with the other's knowledge), and lack of lawful authority. *See Fermino v. Fedco., Inc.,* 7 Cal. 4th 701, 715 (1994) (stating elements of false imprisonment under California law as "nonconsensual, intentional confinement of a person, without lawful privilege" and for an appreciable period of time); *cf. Martensen v. Koch,* 301 F.R.D. 562, 574 (D. Colo. 2014) (observing that "the elements necessary for the crime of false imprisonment are virtually identical to the elements constituting the tort of false imprisonment"). False arrest is false imprisonment "when it is committed by an officer or by one who claims the power to make an arrest." Dobbs' Law of Torts (2d ed.) § 41; *Asgari v. City of Los Angeles,* 15 Cal. 4th 744, 752 (1997) ("False arrest is but one way of committing a false imprisonment . . ." (citation omitted)); *Bronstein v. U.S. Customs and Border Protection,* 2016 WL 861102 (N.D. Cal. Mar. 7, 2016) ("false arrest is not a separate tort, but a subcategory of false imprisonment"); *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995) ("The common law tort of false arrest is a species of false imprisonment . . .").

The Government asserts that Zhao fails to state a claim for false arrest because she has not plausibly pled that the CBP officers lacked lawful authority to detain her. Federal regulations mandate that aliens be detained "at the airport of arrival . . . until admitted" by an immigration officer. 8 C.F.R. § 235.3(a).[3] Detention at the border is mandatory while officials are determining whether the alien is subject to expedited removal or when the alien has been ordered

---

[2] Section 107 of the Restatement (Third) of Torts: Intentional Torts to Persons, on false imprisonment, is in draft form and has not yet been approved.

[3] As matters of public record, regulations and statutes may be considered on a Rule 12(b)(6) motion to dismiss without converting it to a summary judgment motion. *Citizens for a Better Environment-Cal. V. Union Oil Co. of Cal.,* 861 F. Supp. 889, 897 (N.D. Cal. 1994).

4

removed on an expedited basis. 8 C.F.R. § 235.3(b)(2)(iii). CBP officers are authorized to "(1) interrogate any alien . . . as to his right to be or to remain in the United States" and "(2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any [immigration] law or regulation . . ." 8 U.S.C. § 1357(a).

Zhao has pled that her detention was unlawful because the Government had "no articulable facts connecting plaintiff to criminal activity or providing probable cause." (Compl. ¶ 67.) However, unlike in a Fourth Amendment claim against law enforcement officers based on an unreasonable search or seizure,[4] CBP officers do not need to be investigating a crime or have probable cause to detain an alien at the border while determining whether she should be permitted to enter the country. Searches and seizures to examine persons "crossing the border into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States v. Flores-Montano,* 541 U.S. 149, 152–53 (2004) (quoting *United States v. Ramsey,* 431 U.S. 606, 616 (1977)).

Zhao asserts that her allegations that she was handcuffed, held incommunicado and forced to sit on a metal bench for nine hours take her detention outside the scope of the officers' permissible powers and render their actions unlawful. (Opp'n 3.) These allegations may go to the conditions of her confinement, but not whether immigration officers lawfully arrested her. *See Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (observing that challenges to conditions of confinement are constitutional claims properly brought as § 1983 claims). Conditions of confinement are not an element of a false imprisonment claim.

---

[4] Zhao brought constitutional *Bivens* claims against individual CPB officers in a prior action in this Court, *Zhao v. Jacobs,* No. 13-CV-00028. The Court dismissed those claims on the pleadings. *See* Memorandum and Order Granting Motion for Judgment on the Pleadings with Leave to Amend (Jan. 12, 2015), ECF No. 30.

5

For these reasons, the Government's motion to dismiss the first cause of action is GRANTED.

### B. Intentional Infliction of Emotional Distress

Under CNMI law, a cause of action for intentional infliction of emotional distress (IIED) "requires proof of four elements: (1) that the conduct complained of was outrageous; (2) that the conduct was intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Charfauros v. Bd. of Elections,* 5 N.M.I. 188 ¶ 62 (1998). For an IIED claim to go forward, "the plaintiff must set forth facts establishing the outrageousness of the conduct as a matter of law[.]" *Id.* ¶ 64. Courts have a special duty "to guard the gateway to the cause of action for [IIED]" in order to prevent becoming "embroiled in petty disputes that nonetheless cause someone to feel emotionally disturbed and distressed." *Id.* ¶ 63. The test is not whether the plaintiff subjectively felt outraged but whether a reasonable person, an "average member of the community" presented with the facts of the case, would regard the conduct as "utterly intolerable in a civilized society." *Id.* ¶ 68 (quoting Restatement (Second) of Torts ¶ 46 cmt. d).

The Government asserts that Zhao's IIED claim fails because the facts pled in the Complaint do not describe outrageous behavior. It notes that many jurisdictions set a high bar to sustain an IIED claim, requiring conduct that "exceed[s] all bounds usually tolerated by decent society" and involving "actual physical injury." *Abuan v. Gen. Electric Co.,* No. 89-00031, 1992 WL 535958, *5 (D. Guam Feb. 25, 1992) (quoting Prosser & Keeton, *Torts* § 12 (5th ed. 1984)); *see Wong v. Tai Jing,* 189 Cal. App. 4th 1354, 1376 (2010). It maintains that "alleged excessive or inappropriate force during a routine immigration denial of entry at a border[,]" including "being cuffed and having her face pressed against the wall[,] . . . do not shock the conscience."

6

(Mot. to Dismiss 11.)

In the Commonwealth, one factor in determining whether conduct may be considered outrageous is whether the conduct arises "from an abuse by the actor of a position . . . which gives him actual or apparent authority over the other, or a power to affect his interests." *Charfauros,* 5 N.M.I 188 ¶ 69 (quoting Restatement (Second) of Torts § 46 cmt. e). This is especially so "[w]here government officials, with deliberate indifference, recklessly disregard and violate fundamental rights . . ." *Id.* ¶ 70. In *Charfauros,* the Commonwealth Supreme Court found election officials' conduct in depriving plaintiffs of their voting rights sufficiently outrageous to survive summary judgment.

Here, however, the Complaint does not plead facts that show that the CBP officers violated Zhao's constitutional rights. Zhao complains that she was not allowed to speak to an attorney, but she has not shown that an alien denied entry at the border has a right to an attorney. As previously explained, the officers were acting within the law when they detained Zhao. Frisking and handcuffing a lawfully detained person who is uncooperative, or who may pose a danger to herself or others, is justified and not outrageous. *See United States v. Cervantes-Flores,* 421 F.3d 825, 830 (9th Cir. 2005) (finding use of handcuffs justified due to flight risk and officer safety when defendant fled into the desert), *overruled in part on other grounds by Melendez-Diaz v. Massachusetts,* 557 U.S. 305 (2009). Even when viewed in the light most favorable to the plaintiff, the Complaint does not plead facts that show an objectively unreasonable use of force in restraining Zhao. *See Graham v. Connor,* 490 U.S. 386, 397 (1989) (analyzing excessive-force claim in terms of "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or

motivation"). Zhao alleges that she screamed "help" repeatedly and waved her hands whenever officers opened the door to the room where she was detained. (Compl. ¶¶ 32, 53.) In response, at one point, officers gang-tackled her, shoved her face and pinned her shoulders against a wall, grabbed her hair, twisted her hands behind her back and cuffed her. (*Id.* ¶¶ 55–57.) They kicked her feet apart before conducting a body search. (*Id.* ¶¶ 58–59.) She was then placed in a detention room equipped only with a metal bench for approximately 22 hours (*Id.* ¶ 43), which she later concedes was closer to nine hours. (Opp'n at 2.) While Zhao says the rough treatment was painful, she does not allege she was physically injured. She does not allege that any additional physical force was applied against her once she had been cuffed and searched. The police conduct she describes does not exceed the bounds tolerable to a civilized society.

Therefore, the Government's motion to dismiss the second cause of action is GRANTED.

**IV. CONCLUSION**

For the reasons stated above, the Court orders as follows:

(1) The Government's Motion to Dismiss is GRANTED as to the first cause of action for false imprisonment/arrest. Because as a matter of law Zhao cannot plead facts that would show CBP officers lacked authority to detain her for inspection, the dismissal is with prejudice.

(2) The Government's Motion to Dismiss is GRANTED as to the second cause of action for intentional infliction of emotional distress. The dismissal is without prejudice.

SO ORDERED this 25th day of July, 2016.

/s/ *signature*

RAMONA V. MANGLONA
Chief Judge

8